738 A.2d 374 (1999)
325 N.J. Super. 173
Martha ADEDOYIN, Plaintiff-Appellant,
v.
ARC OF MORRIS COUNTY CHAPTER, INC., Margo Conley, Jamie Gormerly, Cecelia Kennedy, Gail Paradise, Peter Murphy, and Bill Testa, Defendants-Respondents.
Superior Court of New Jersey, Appellate Division.
Submitted September 15, 1999.
Decided October 18, 1999.
*375 Eldridge Hawkins, East Orange, attorney for plaintiff-appellant (Christopher C. Roberts, on the brief).
Littler Mendelson, Morristown, attorneys for defendants-respondents (Pamela J. Moore and Karen Leigh Beede, on the brief).
Before Judges LEVY, CARCHMAN and LEFELT.
The opinion of the court was delivered by
LEFELT, J.S.C., (temporarily assigned).
Plaintiff Martha Adedoyin appeals from denial of her motion to vacate the dismissal of her complaint without prejudice and from the grant of defendants' cross-motion to dismiss her complaint with prejudice for failure to answer interrogatories. The motion judge did not explain why he decided to dismiss plaintiff's complaint instead of compelling more specific answers, which relief had been alternatively sought by defendants. Because we are unable to determine whether the motion judge's discretion was properly exercised, we vacate the dismissal, reinstate the complaint and remand to determine whether more specific answers should be compelled or plaintiff's complaint dismissed without prejudice under R. 4:23-5(a)(1).
On January 29, 1998, defendants served Adedoyin with interrogatories and document production requests. On May 4, 1998, Adedoyin provided the requested documents, but did not answer the interrogatories.
Forty-six days after the interrogatories were due, on May 15, 1998, defendants filed a motion to dismiss Adedoyin's complaint for failure to answer the January 29, 1998, interrogatories. Alternatively, defendants moved for an order compelling discovery.
On June 8, 1998, four days before the motion's return date, defendants received Adedoyin's answers to the January 29, 1998, interrogatories. Of seventy-four interrogatories with subparts, defendants asserted in a June 9, 1998, letter that Adedoyin's answers to fourteen questions were not "fully responsive." Accordingly, defendants refused to withdraw their motion and claimed that because the answers were not fully responsive, they should be treated as if plaintiff failed to answer.
Defendants' June 9, 1998, letter invited Adedoyin's counsel to contact defense counsel if he had any questions or would like to discuss this matter further. Instead of discussing this matter with defense counsel, Adedoyin's counsel filed a certification stating that "plaintiff provided answers to defendants' interrogatories."
*376 On June 12, 1998, the first motion judge granted defendants' motion to dismiss Adedoyin's case without prejudice. This motion judge did not find any facts or otherwise explain why he decided to dismiss plaintiff's complaint instead of compelling more complete answers.
Thereafter, instead of serving answers to the interrogatories that would have met defendants' objections and paying the restoration fee, Adedoyin, on July 24, 1998, filed a motion to vacate the first motion judge's June 12 order. Defendants opposed this motion, and on August 21, 1998, the first motion judge denied Adedoyin's motion. Again, this motion judge failed to explain his decision.
Once again, maintaining that the dispute was over the adequacy of the answers and not a failure to answer, Adedoyin moved to vacate the first motion judge's June 12 and August 21 Orders. Now, because more than ninety days had transpired since the June 12, 1998, dismissal without prejudice, defendants cross-moved to dismiss Adedoyin's complaint with prejudice. After oral argument on September 25, 1998, a second motion judge denied Adedoyin's motion to vacate and granted defendants' cross-motion to dismiss with prejudice. This judge stated:
I think it's quite obvious, that when (first motion judge) had the original motion, he had an opportunity to view the answers. And I am sure that he viewed many of the important ones. The questions asking for the factual basis, in considerable detail, to support various parts of the claim in the complaint, were quite deficient. And really didn't doesn'tdid not serve to give the defendant any real information about the facts behind the lawsuit. And one would expect the plaintiff to have a factual basis for allegations, once suit is filed.....
The fact of the matter, is that I cannot find that resfully responsive answers have ever been served to many of the questionsto many of the obviously important questions.
The cases, cited by counsel, I think they're all pre-1990 cases.1990, being when Rule 4:23-5 was amended. And I think amended to indicate that it would take rather unusual circumstances, highly unusual ones, to cause a vacation in order to dismiss or to suppress.
Later, Adedoyin's counsel stated that "[t]here are factual ... allegations made in the answers that she supplied." The second motion judge replied, "In some of them perhaps, but not in all of them."
Plaintiff has never explained why she failed to serve her interrogatory answers on time. Furthermore, we agree with the second motion judge that fully responsive answers to the interrogatories have never been supplied. For example, it was plainly insufficient to answer Questions 28, 29, 67 and 68, which sought factual bases for asserted legal claims, with an objection that the question sought legal conclusions. It is also clear that Adedoyin's answers to Questions 72 and 26 were incomplete. For example, Question 72 sought "with particularity the nature, basis, amount, and manner of computation of all monetary relief and/or damages that you are seeking and identify each and every document which reflects or relates to the information requested in this interrogatory." Adedoyin answered: "Plaintiff lost wages, medical coverage, dental coverage, $500,000 for pain and suffering." Given the tenor of these answers, plaintiff's attorney should have been willing to provide more specific answers instead of insisting that answers had been provided.
However, some of Adedoyin's answers may have been sufficient. For example, Question 73 sought plaintiff's factual basis for her punitive damage claim. Adedoyin answered by reference to her responses to Interrogatories 24, 49, 36 and 66. These answers are not devoid of factual content. They include, for example, complaints about Adedoyin's work load, lunch breaks, inappropriate clients, pay discrepancies, *377 and record-keeping disparities allegedly not required of white supervisors. Adedoyin, among other complaints, also revealed in this answer that:
Margo Conley would constantly look in plaintiff's door, hid behind doors when plaintiff was in a unit, listen to plaintiff's phone calls, follow plaintiff, listen through the vent to hear plaintiff's conversations, and used an intercom system that was idle except for when she wanted to use it to hear plaintiff's conversations. Conley stated in a staff meeting that she had to watch plaintiff.
As another example, Question 31 asked plaintiff to identify individuals with knowledge or information to support plaintiff's assertions that defendants conducted and maintained a system of discrimination and harassment that damaged plaintiff. Adedoyin's answer referenced her answer to Interrogatory 6. That answer referred specifically to nine persons by name. As to Renee Farrell, one of the nine persons noted, plaintiff answered that she:
[C]onsistently spoke with [Renee] regarding plaintiff's complaints of discrimination, harassment and retaliation. Plaintiff told Ms. Farrell how she complained to Margo Conley and Margo's supervisor about the unfair treatment plaintiff was receiving. Ms. Farrel was aware how defendants forced plaintiff to take a lot of paperwork home, received increased workload, received inappropriate clients who had behavioral problems, denied lunch breaks, gave ongoing difficult cases and ignored her complaints regarding her staff's complaints of discrimination. Plaintiff told Ms. Farrell that defendant Gail Paradise instructed plaintiff to sabotage Regina Kennedy, a black employee, so that the defendants could fire Ms. Kennedy. Plaintiff told Ms. Farrell that defendants retaliated against her for refusing to sabotage Ms. Kennedy.
It is not clear that plaintiff's answers to all the questions objected to by defendants were deficient. On this record, we do not know what the first motion judge thought about the adequacy of Adedoyin's answers. And, the second motion judge focused on whether "exceptional circumstances" had been established by plaintiff because of the then existing text and interpretation of R. 4:23-5(a)(2). See State v. 1987 Chevrolet Camaro, 307 N.J.Super. 34, 42, 704 A.2d 90 (App.Div.), certif. denied, 153 N.J. 214, 708 A.2d 65 (1998) (discussing that ultimately filing answers to interrogatories does not constitute exceptional circumstances).
R. 4:23-5 was developed in response to the Supreme Court's consternation in Aujero v. Cirelli, 110 N.J. 566, 542 A.2d 465 (1988), about late answers to interrogatories. Pressler, Current N.J. Court Rules, comment 3 on R. 4:23-5 (2000). The rule provides a two step procedure to ensure that lawyers provide more timely answers to interrogatories. For failure to answer interrogatories, an aggrieved defendant may move initially for dismissal of plaintiff's complaint without prejudice and then, if the failure continues for more than ninety days, for a dismissal with prejudice. R. 4:23-5(a)(1); R. 4:23-5(a)(2). Thus, the rule's scheme "is to attract the delinquent party's attention by the dismissal without prejudice accompanied by the threat of a final disposition of the cause of action through a dismissal with prejudice if responsive answers to interrogatories are not served within the allotted ninety day period." Feinsod v. Noon, 261 N.J.Super. 82, 84, 617 A.2d 1234 (App.Div.1992).
The current rule, in pertinent part, provides as follows:
Without Prejudice. If timely answers to interrogatories are not served and no motion for an extension has been made pursuant to R. 4:17-4(b), the party entitled to the answers may move, on notice, for an order dismissing or suppressing the pleading of the delinquent party ... Unless good cause for other relief is shown, the court shall enter an order of dismissal or suppression without prejudice... The delinquent party may move *378 on notice for vacation of the dismissal or suppression order at any time before the entry of an order of dismissal or suppression with prejudice. The motion shall be supported by affidavit reciting that fully responsive and certified answers to interrogatories have been served and shall be accompanied by payment of a $100 restoration fee to the Clerk of the Superior Court if the motion to vacate is made within 30 days after entry of the order of dismissal or suppression or a $300 restoration fee if the motion is made thereafter. If, however, the motion is not made within 90 days after entry of the order of dismissal or suppression, the court may also order the delinquent party to pay sanctions or counsel fees and costs, or both, as a condition of restoration.
[R. 4:23-5(a)(1) (emphasis added).]
With Prejudice. If an order of dismissal or suppression without prejudice has been entered and not thereafter vacated, the party entitled to the answers may, after the expiration of 90 days from the date of the order, move on notice for an order of dismissal or suppression with prejudice ... The motion to dismiss or suppress with prejudice shall be granted unless a motion to vacate the previously entered order of dismissal or suppression without prejudice has been filed by the delinquent party and either fully responsive and certified answers to interrogatories have been served or exceptional circumstances are demonstrated.
[R. 4:23-5(a)(2) (emphasis added).]
When a motion to dismiss or suppress without prejudice is made, the rule requires a dismissal or suppression unless good cause for other relief is shown. R. 4:23-5(a)(1). Ninety days after the dismissal without prejudice, however, the delinquent party can move to have his or her case restored by filing and serving fully responsive and certified answers to the interrogatories or by demonstrating exceptional circumstances. R. 4:23-5(a)(2).
The "good cause" standard which applies to the motion to dismiss without prejudice is less rigorous than the "exceptional circumstances" that must be shown to avoid a dismissal with prejudice for any failure to answer that has continued more than ninety days after the dismissal without prejudice. Suarez v. Sumitomo Chemical Co., 256 N.J.Super. 683, 688-89, 607 A.2d 1057 (Law Div.1991).
It has also been pointed out that the "main objective [of the rule] is to compel the answers [to interrogatories] rather than to dismiss the case." Pressler, Current N.J. Court Rules, comment 3 or R. 4:23-5 (quoting 1990 Report of the Committee on Civil Practice, 125 N.J.L.J. Index page 421 (1990)). However, achievement of the rule's goals requires meticulous attention to its prescriptions. Zimmerman v. United Services Auto. Ass'n, 260 N.J.Super. 368, 376, 616 A.2d 957 (App.Div.1992).
Contrary to defendants' contentions, incomplete answers can not be automatically considered as a failure to answer under R. 4:23-5. Incomplete answers are treated as a failure to answer only with regard to R. 4:23-1(b). That provision does not carry over into R. 4:23-5. Thus, in cases where interrogatory answers are received before the return date of the motion to dismiss without prejudice, the party entitled to the answers cannot control the future course of the proceeding simply by asserting that the answers were not fully responsive.
As Judge Pressler explained:
There is a broad area for bona fide dispute between answers which are patently inadequate and a set of answers which fully meets the propounder's expectations. We are also satisfied that this much at least is clear. If the set of answers, considered in the context of the specific cause of action and the progress of discovery to date would have been sufficient to withstand a motion for dismissal without prejudice under R. 4:23-5(a)(1), then it is also sufficient to withstand *379 a motion for dismissal with prejudice under R. 4:23-5(a)(2).
[Zimmerman, supra, 260 N.J.Super. at 377, 616 A.2d 957.]
Because Plaintiff's answers were submitted before the return date of the first motion, we believe that it was incumbent on the first motion judge to determine whether the interrogatory answers were sufficiently responsive to preclude the dismissal motion.
In other words, under R. 4:23-5(a)(1), the focus of the motion judge must be on whether good cause is present for relief other than a dismissal without prejudice for failure to answer. Even if not fully responsive in the eyes of defendants, the motion judge must determine whether the answers are within the realm of a bona fide dispute and whether the "the real discovery dispute is not a failure to answer, but rather an alleged failure to answer in a `fully responsive' manner." Id. at 378, 616 A.2d 957. If there is a bona fide dispute over the responsiveness of the answers, then it is error to dismiss the complaint. Ibid.
We recognize that many parties entitled to interrogatory answers have been withdrawing their motions to dismiss without prejudice when responsive answers are received before the motion return date. Disputes over answer content have thereafter been resolved voluntarily or by subsequent motion.
However, in some cases, as happened here, the party entitled to answers refuses to withdraw the motion and claims that the answers which were submitted are insufficient. When taking such action the objecting party should promptly supply the judge with the interrogatories and answers so the judge can properly focus on the dispute. The motion judge must then analyze the answers in the context of the cause of action and the discovery exchanged to date, to decide whether the delinquent party has established good cause for other relief or whether the pleading must be dismissed or suppressed without prejudice under R. 4:23-5(a)(1).
When the interrogatories are fully responsive, the motion should be denied. Whenever there is, however, either a bona fide dispute over responsiveness or interrogatory answers that are insufficient, the judge should identify those questions which need to be answered more specifically, whether or not a motion to compel has also been made. In this way, the parties' subsequent actions, whether taken during the ninety day restoration period or in subsequent discovery, will be informed by a judicial determination and not the subjective view of either party.
The situation presented by this appeal is unlike Rodriguez v. Luciano, where interrogatory answers were not filed until after the ninety day period, on the day before the return date of the motion to dismiss with prejudice. 277 N.J.Super. 109, 111-12, 649 A.2d 87 (App.Div.1994). In the instant case, answers were filed before the return date of the motion to dismiss without prejudice and the defendants' motion included an alternative motion to compel discovery. In this case, the ninety day period of R. 4:23-5(a)(2) had not even begun.
After the ninety day period, under the rule in effect at the time of the instant case and in Rodriguez, only exceptional circumstances could save the delinquent party's case. R. 4:23-5(a)(2). In Rodriguez, we decided that plaintiff's failure to communicate with her attorney for more than one year, and the attorney's transitory staff problems were not exceptional circumstances justifying submission of the answers after the ninety day period on the day before the motion to dismiss with prejudice was to be heard. Rodriguez, supra, 277 N.J.Super. at 112-113, 649 A.2d 87. Rodriguez did not discuss whether plaintiff's late interrogatory answers were fully responsive. Ibid.
In addition, Rodriguez reflects an interpretation of the rule that has been *380 changed by recent amendments. Under our prior interpretation, "the mere provision of answers to interrogatories may not satisfy the requirements of exceptional circumstances in every case." Klajman v. Fair Lawn Estates, 292 N.J.Super. 54, 61, 678 A.2d 289 (App.Div.), certif. denied, 146 N.J. 569, 683 A.2d 1164 (1996). Recent amendments to R. 4:23-5(a)(2) provide that the motion to dismiss with prejudice shall be granted "unless a motion to vacate the previously entered order of dismissal or suppression without prejudice has been filed by the delinquent party and either fully responsive and certified answers to interrogatories have been served or exceptional circumstances are demonstrated." R. 4:23-5(a)(2) (emphasis added). Accordingly, the submission of fully responsive answers, even without exceptional circumstances, now precludes dismissing the complaint with prejudice.
In this case, no motion judge has decided why it was inappropriate to compel more specific answers or, more significantly, why submission by plaintiff of these interrogatory answers did not constitute good cause for other relief thereby precluding dismissal of her complaint without prejudice. In the absence of such a decision, we are unable to determine whether the first motion judge's discretion was properly exercised.
Plaintiff should not misinterpret this decision. We do not condone either the woefully late submission of her interrogatory answers or the submission of non-responsive interrogatory answers. It should not require a motion to dismiss for an attorney to supply responsive interrogatory answers, and we do not take any position on whether "good cause" has been shown by plaintiff sufficient to preclude her complaint from being dismissed without prejudice under R. 4:23-5(a)(1).
Accordingly, the judgment dismissing the complaint is vacated, the complaint is reinstated and the matter is remanded for a hearing on whether more specific answers should be compelled or plaintiff's complaint dismissed without prejudice under R. 4:23-5(a)(1). If plaintiff's complaint is dismissed without prejudice, the judge shall identify which questions plaintiff must more specifically answer during the ninety day restoration period to render the answers "fully responsive." We do not retain jurisdiction.